UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61218-CIV-DIMITROULEAS/SNOW

Cabot East Broward 2 LLC
and Cabot East Broward 34 LLC, individually
and on behalf of all others similarly situated,

        Plaintiffs,

v.                              CLASS ACTION

Carlton P. Cabot, et. al,

        Defendants.
_____/

**CBRE, INC'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE EXPERT TESTIMONY OF JEREMY S. LARKIN**

CAREY O'MALLEY WHITAKER
MUELLER ROBERTS & SMITH
712 S. Oregon Avenue
Tampa, Florida 33606
Tel: 813-250-0577

GREENBERG TRAURIG, P.A.
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
Tel: 813-318-5700
Fax: 813-318-5900

GREENBERG TRAURIG, P.A.
401 E. Las Olas Blvd., Suite 2000
Ft. Lauderdale, FL 33301
Tel: 954-768-8285
Fax: 954-765-1477

GREENBERG TRAURIG, P.A.
333 S.E. 2nd Ave.
Miami, FL 33131
Tel: 305-579-0564
Fax: 305-579-0717

CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131
Tel: 305-530-0050
Fax: 305-530-0055

CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd. – Suite 1000
Tampa, Florida 33607-5780
Tel: 813-223-7000
Fax: 813-229-4133

*Co-Counsel for Defendant CBRE, Inc.*

## INTRODUCTION

As the Eleventh Circuit recently made clear, "[t]he district court's responsibility to serve as the singular source of law require[s] it to be vigilant about the admissibility of legal conclusions from an expert witness" and to take "adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion." *Commodores Entertainment Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (internal citation omitted). Because Larkin's "expert report is replete with legal opinion[s]" and his testimony "fares no better," *Commodores* establishes that this Court should exclude his testimony in its entirety. *See id.*

If Larkin had intended to testify generally about property management, its "industry standards, customs, and practices," and "how a prudent and responsible property manager and leasing agent would conduct itself," (ECF 253 at 1, 3-4), he should have said so in his report. Instead, Larkin's opinions are squarely framed—in decidedly legal terms—to tell the jury what legal duties and obligations CBRE supposedly owed the TIC investors under the contracts in this case, and how CBRE purportedly breached those duties and obligations.

These are pure legal opinions. Plaintiffs' attempt to reframe that testimony in an effort to avoid its deficiencies is unavailing.

Plaintiffs claim that although CBRE's motion "focuses on narrow aspects" of Larkin's opinions, it "disingenuously seeks to exclude" all of Larkin's testimony. (ECF 253 at 1, 10). But, as *Commodores* makes clear, exclusion of all of his testimony is appropriate because all of his opinions are variations of, depend on, or are inextricably intertwined with his opinions that (1) CBRE owed the TIC investors a fiduciary duty to manage the properties in their best interests—in particular, to advise them of the "misappropriation" of monies by LeaseCo—and (2) CBRE breached this duty.

Finally, Plaintiffs have not satisfied their burden to show how Larkin's general commercial experience provides a reliable basis for his opinions on the tax and legal issues regarding the very specific type of investments in this case—namely, his opinions on the technical, legal requirements of section 1031 investments and the duties related to the management of TIC and master lease structures. His opinions should not be presented to the jury.

1

## ARGUMENT

I.  **Under Eleventh Circuit Precedent, Larkin Should Be Excluded From Testifying Altogether Because His Opinions Are Variations Of, Depend On, or Are Inextricably Intertwined With Improper Legal Conclusions On Ultimate Issues.**

Asserting that CBRE's motion is now "moot," Plaintiffs concede that it would be improper for Larkin to opine "as to the ultimate issue of whether CBRE owed the Class of TIC investors a fiduciary duty," and they now agree that "he will not be testifying to" that opinion. (ECF 253 at 1).

But Plaintiffs do *not* concede that Larkin will refrain from offering his opinion that CBRE *breached* a fiduciary duty to the TIC investors, specifically "by failing to alert the[m] that funds generated by the Florida Properties were being misappropriated." (Expert Report of Jeremy Larkin (ECF 235-1) at 4). This is also an improper legal conclusion on an ultimate issue.

As explained in *Brown v. Jordan International v. Carmicle*, 2015 WL 11661770, at *1 (S.D. Fla. Oct. 9, 2015), "[w]hether [defendants] . . . breached a fiduciary duty to [Plaintiffs] is an ultimate issue of law in this case and therefore is an inappropriate subject of expert opinion." *See also Snyder v. Wells Fargo Bank, N.A.*, 594 Fed. App'x 710, 714 (2d Cir. 2014) (district court correctly excluded expert's opinion that defendant breached its contractual and fiduciary duties by failing to implement hedging strategy).

Moreover, the opinions that Plaintiffs argue in their response are proper are, to the contrary, nothing more than variations of Larkin's improper legal opinions on the ultimate issues of fiduciary duty and breach of that duty:

- "[T]he constraints imposed by 1031 Exchanges rendered the 'property owners especially dependent on CBRE to manage the Florida Properties,'" "with the TIC owners' best interest in mind" and in particular, to "alert the[m] . . . of any misappropriation of funds generated by the Florida Properties." (ECF 253 at 5, 6).

- "Based on [Larkin's] experience in the industry," "property managers are considered in the industry to be fiduciaries," and the private placement memorandum (PPM) in this case, with disclaimers of a fiduciary duty and disclosures of conflicts of interests "does not eliminate or affect any property manager's fiduciary duty to the TIC investors." (ECF 253 at 7-8).

The remainder of Larkin's opinions summarized in his report likewise go to those same ultimate issues:

- "CBRE . . . agreed to manage the Florida Properties for the benefit of the property owners." (ECF 235-1 at 4).

- "Among other things, CBRE, as either the owners' agent or subagent, accepted responsibility to ensure rents generated by the Florida Properties were applied in accordance with certain cash management agreements . . . ." (ECF 235-1 at 4).

- "CBRE's duty to inform the owners of any misappropriation of funds from the Florida Properties arose out of the Property Management Agreements (and related agreements), the structure of the investments for all six Florida Properties, and ordinary and customary practices in the commercial real estate industry." (ECF 235-1 at 4).

- "Once CBRE learned rents were being misappropriated from the Florida Properties, and I believe CBRE was aware of that fact when it was managing the Florida Properties as a result of its day-to-day involvement with and their superior and exclusive knowledge of the Florida Properties' finances and operations, CBRE should have directly alerted the property owners and promptly moved to place any relevant Cabot Entity into default pursuant to the applicable provisions of the relevant Property Management Agreements." (ECF 235-1 at 5).

- "CBRE . . . breached its duties to the property owners" by "failing to alert the owners of the misappropriation of funds from the Florida Properties" and "billing and collecting management fees while funds were being misappropriated . . . ." (ECF 235-1 at 5).

Every one of these opinions improperly seeks to usurp the judge's role and to "tell the jury what result to reach" on the ultimate issues in this case. *See Commodores*, 879 F.3d at 1128 (quoting *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1451 (11th Cir. 1990)). Consequently, Plaintiffs are wrong in saying that it would be an abuse of discretion to exclude all of Larkin's testimony. The Eleventh Circuit's controlling decision in *Commodores* makes clear that it is just the contrary.

In *Commodores*, a trademark infringement case, the plaintiff sought to exclude the defendant's expert from testifying, asserting that the testimony "amounted to improper legal opinions and conclusions." 879 F.3d at 1125. The district court initially ruled that the expert could testify so long as he did not offer "any legal conclusions or opinions concerning the law." *Id.* But after reviewing the expert's report and hearing his proffered testimony, it excluded his testimony entirely. *Id.*

3

The Eleventh Circuit affirmed. In an opinion authored by Judge Marcus, the court explained that an expert "may not testify to the legal implications of conduct" or "tell the jury what result to reach." *Id.* (quoting *Montgomery*, 898 F.2d at 1541). "Rather, 'the court must be the jury's only source of law,' and *"courts must remain vigilant against the admission of legal conclusions."* *Id.* (emphasis added). "Thus, the district court must take 'adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion.'" *Id.* (quoting *United States v. Herring*, 955 F.2d 703, 709 (11th Cir. 1992)).

In affirming, the Eleventh Circuit concluded that the report of defendant's expert was "replete with legal opinions." *Id.* at 1129. For example, the expert opined that the original band members "owned the underlying marks jointly as tenants in common," the defendant was an equal owner with equal rights to use the trademark, and the defendant did not lose this right when he left the band. *Id.*

The Eleventh Circuit found the expert's testimony "fare[d] no better." *Id.* It included opinions that "it's common in the industry that the owner of the name is the person or persons who create the signature sound," "he would expect to see written agreements for any transfer of ownership rights," and "a hiatus from a band is not enough to relinquish ownership." *Id.* That testimony "would have invaded the court's exclusive prerogative" and "risked confusing, prejudicing, or misdirecting the jury." *Id.*

These infirmities are equally present here. Larkin seeks to opine that the contractual disclaimers of a fiduciary duty and disclosures of conflicts of interest in the PPM would not change the industry understanding that CBRE, as any property manager would have, owed fiduciary duties to the TIC investors. (*See* ECF 253 at 7). No matter how Plaintiffs now seek to re-cast it, that has exactly the same effect as telling the jury that CBRE owed the TIC investors a fiduciary duty in this case.

This is not, as Plaintiffs suggest, (ECF 253 at 11), a case in which "the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the industry," and where the expert only makes " passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context." *See Travelers Indem. Co. of Ill. V. Royal Oak Enters.*, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004).

4

Larkin's testimony is just the opposite. It consists of thinly-veiled legal conclusions that "attempt to instruct the jury on the law or [CBRE's] obligations under the law." *See Chaney v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 12838839, at *5 (M.D. Fla. Dec. 9, 2015). Indeed, Larkin says there is no settled industry standard supporting his opinions in this discrete context.

Moreover, as in *Commodores*, this attempt to re-characterize Larkin's general testimony is too little too late. In *Commodores*, the defendant argued his expert's opinions actually related to "music industry customs and norms." *Commodores*, 879 F.3d at 1129. The Eleventh Circuit disagreed, explaining "these opinions were not offered in his expert report, and [under Federal Rule of Civil Procedure 26(a)(2)(B)(i),] he was therefore properly precluded from discussing these topics at trial." *Id.*

The same is true here. Plaintiffs' response to CBRE's *Daubert* motion seeks to re-write Larkins' report, which they cannot do. Nowhere does he purport to opine on "how a prudent and responsible property manager and leasing agent would conduct itself," as Plaintiffs now claim he should be allowed to do. (ECF 253 at 3). Nor does he articulate any specific industry standard for commercial transactions such as these.

Finally, Plaintiffs seize on CBRE's recognition that "some limited matters" touched upon by Larkin might have been appropriate expert opinions but for the fact that the inadmissible aspects are pervasive and inseparable. (ECF 253 at 11; ECF 235 at 1). They insist that excluding all of Larkin's testimony would be an abuse of discretion since some of it might be admissible. (ECF 253 at 10-11).

*Commodores* and other Eleventh Circuit precedent makes clear that is not the case. *See, e.g., Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1245 (11th Cir. 2018) (affirming exclusion of expert testimony entirely); *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1364-65 (S.D. Fla. 2015) (excluding expert testimony "in its entirety" where impermissible "legal conclusions [were] scattered throughout" his testimony); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1350 (S.D. Fla. 2010) (excluding expert testimony "in its entirety" because plaintiffs failed to meet their burden of establishing reliability of expert testimony and "the major problem identified . . . persist[ed] throughout" the expert's report and testimony).

Indeed, as the Eleventh Circuit explained in *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty. Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005), it is *Plaintiffs'* burden as the proponent of Larkin's testimony to present it "in a form that persuades the trial court" it is

5

admissible under *Daubert*. There, in affirming the trial court's exclusion of expert testimony in its entirety, the Eleventh Circuit explained: "we do not suggest that it would have been impossible for [the plaintiff] to extract from [his expert] some admissible expert opinions; we simply find that [the plaintiff] did not carry her substantial burden of doing so . . . ." *Id.*

Plaintiffs have not met their burden here. All of Larkin's testimony should be excluded.

## II. Larkin's Opinions Are Not Reliable.

### A. Larkin's General Commercial Real Estate Experience Does Not Provide Any Basis for Reliably Opining On the Particular Investments in this Case.

Plaintiffs assert that Larkin's extensive general commercial real estate experience is a reliable basis for his opinions. To the contrary, their own recitation of his general experience highlights Larkin's *lack* of experience relevant to this specific type of investment—a TIC ownership under a master lease structure. (ECF 253 at 2-6). It certainly does not show what is required under *Frazier*: *how* his general experience leads him to the conclusions he reaches about the very specific type of investment in this case, why that general experience is a sufficient basis for those opinions, and how his general experience was reliably applied to the specific facts of this case. *See United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

Plaintiffs boast that Mr. Larkin's "vast experience in real estate easily qualifies him as an expert in this matter to testify to topics such as . . . tenancies-in-common," "master leases," and "1031 Exchanges." (ECF 253 at 3). But, CBRE's challenge is to reliability, a more demanding standard than qualification. And the fact remains; Larkin has hardly any specific experience in these areas.

In his report, Larkin failed to identify *any* experience with TIC investments or master leases whatsoever. (ECF 235-1 at 1-2). He offered little more in deposition. While saying that he has "work[ed] with TIC operators" and has "provide[d] information on TIC investments to clients," he conceded that he has not sold any TIC investments, he has never served as a property manager on a property owned by a TIC structure, the only master lease property he managed was in the 1980s (and it was not owned by TIC investors), and he has never given an expert opinion on TIC structures. (Transcript of Deposition of Jeremy Larkin ("Depo") (ECF 235-2) at 16-22)).

Plaintiffs have not shown how Larkin's experience allows him to reliably opine on the complicated legal relationships and duties at issue in the TIC master lease structures here.

The same is true as to Larkin's limited section 1031 experience. Although he admitted in deposition that he is not a tax expert nor an expert on Revenue Procedure 2002-22, Plaintiffs

6

claim his general real estate experience, coupled with his limited experience with clients investing in 1031 Exchanges, renders reliable his "limited proposed testimony" on 1031 Exchanges. Plaintiffs insist this is so because Larkin only wants to "explain the basics of 1031 Exchanges to the jurors." (ECF 253 at 4-5).

According to Plaintiffs, however, "the basics" include the very specific legal opinion that "the constraints imposed by 1031 Exchanges rendered 'the property owners especially dependent on CBRE to manage the Florida Properties and alert the[m] . . . of any misappropriation of funds generated by the Florida Properties." (ECF 253 at 5). Plaintiffs do nothing to show how Larkin's general experience makes those legal opinions reliable.

### B. Larkin's Litigation-Driven Opinions Lack Intellectual Rigor, Including Any Reference to Any Objective Source, Standard, or Other Indicia of Reliability.

Plaintiffs all but ignore the fact that Larkin's opinions about CBRE's duties and obligations under the contracts ignore critical provisions and contracts in this case. Plaintiffs' singular response is that Larkin *did* consider the PPM, but he "believes, based on his experience in the industry, that it does not eliminate or affect any property manager's fiduciary duty to the TIC investors." (ECF 253 at 7).

This is not at all what Larkin said in deposition. He admitted that, although he saw the disclosures in the PPM, he dismissed them because he believes the investors did not "really execute[ ] this document." In his view, "in the written contract documents, that's—there's no definite statement about" the lack of a fiduciary duty. (Depo at 164-65). But he did not consider the Purchase Agreements Plaintiffs executed, the investment contracts expressly made "pursuant to" the PPM. (*See* ECF 214 at 3). And, despite acknowledging Plaintiffs' execution of the Acknowledgements and Agreements to the PPM, he disregarded those as well because he doubts Plaintiffs actually read them. (*Id.* at 165-66).

This one-sided interpretation of the enforceability of these investment contracts—which ignores the law requiring contract documents to be read as a whole and requiring them to be enforced whether read or not—is clearly improper extrinsic evidence seeking to vary the terms of the contracts themselves. Plaintiffs fail entirely to respond to this point. Larkin's effort to avoid the contracts Plaintiffs signed fails for this reason alone.

But further still, Plaintiffs' effort to cloak Larkin's opinions as industry practice opinions fails to make them admissible. First, nowhere in Larkin's report does he opine that "property managers are considered in the industry to be fiduciaries." (ECF 253 at 8). Second, Larkin

7

himself admitted he could point to no industry standard that supports his opinion that CBRE owed (and breached) the TIC investors a fiduciary duty. (Depo. at 84-87). Plaintiffs claim that IREM's Code of Ethics "provide[s] more than a sufficient basis for [Larkin] to testify that property managers are considered in the industry to be fiduciaries." (ECF 253 at 7-8). But, Plaintiffs cannot now offer support for this new opinion that Larkin himself did not rely on, either in his report or deposition. *See Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824 (11th Cir. 2009) (affirming order striking expert testimony where expert failed to disclose necessary bases for his opinions pursuant to rule 26).

Not only did Larkin not rely on that code in his report, in deposition he dismissed IREM as "the residential realtors version of an entity that's attempting to create the industry standards in property management," but that is "not particularly" "authoritative" or respected in the commercial real-estate world. (Depo. at 98-99). Common sense tells us the same duties need not necessarily be imposed in entirely different circumstances.[1]

Plaintiffs are also wrong that CBRE's Standards of Business Conduct, which are internal, aspirational guidelines, constitute industry standards. As the court explained in *Good v. American Water Works Co.*, 2016 WL 6024426, at *9 (S.D.W. Va. Oct. 13, 2016), "an 'industry standard' is one that is well known and commonly accepted," and it "requires at least some evidence that an equal or similar standard has been adopted or recognized by another industry actor." *Id.* (internal citations omitted). The district court precluded expert testimony that the defendant breached a duty based on a purported industry standard that it found to be "principles and framework" and that one court had characterized as "aspirational" guidelines. Larkin similarly cannot rely on CBRE's internal guidelines to support his legal opinions regarding CBRE's duties in this case or the duties of property managers generally.

Finally, instead of pointing to any objective, authoritative standard, Larkin openly admitted in deposition that his opinion regarding the purported "uniqu[e] dependency" of the TIC investors on CBRE based on section 1031 is in fact derived "from discussing that with tax attorneys and tax accountants who had advised me this is how the law is interpreted." (Depo. at 15-16). The law does not allow Larkin to rely on such unnamed experts, where the reliability of

---

[1] CBRE will move in limine for an order precluding Plaintiffs from presenting argument, evidence, or testimony to the jury regarding IREM's Code of Professional Ethics and CBRE's Standards of Business Conduct. Their irrelevance to this case and inadmissibility will be explained in more detail there.

8

their opinions has not or may not be tested, and Larkin himself is not an expert in this area. (ECF 235 at 11-12).

Plaintiffs' only response is that Larkin did *not* rely on unnamed tax experts and that his opinion is in any event supported by the tax opinion of Baker & McKenzie provided to the TIC investors in this case. (ECF 253 at 5-6).

Larkin himself said that the basis for his opinion that the TIC investors would be uniquely dependent on the property manager to protect their interests were his discussions over the years with unnamed tax experts, which informed his understanding of section 1031 and "advised him how the law is interpreted." Plaintiffs fail to show how the reliability of this opinion can be tested.

### III. Larkin Cannot Opine on CBRE's State of Mind.

Plaintiffs seek to have Larkin testify that CBRE "knew" or was "aware" that money was being "misappropriated" by LeaseCo. (Report at 4, n.2, 5, 12). The law is well established that an expert cannot opine on a party's state of mind. (*See* ECF 235 at 13); *see also In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010) ("These opinions [on defendant's knowledge and intent] are inadmissible: courts have held that the question of (corporate) intent or motive is a classic jury question and not one for experts.").

This is particularly true where, as here, that opinion is an improper legal conclusion telling the jury what to conclude on an ultimate issue. *See, e.g., Omar v. Babcock*, 177 Fed. App'x 59, 63 n.5 (11th Cir. 2006) (affirming district court's order striking improper legal conclusions as to whether defendants "acted with deliberate indifference").

Plaintiffs altogether ignore this argument and the plethora of authority supporting it. Instead, without citing a single authority of their own, they argue this testimony on CBRE's state of mind is proper because "there is a substantial basis" to support it. In their view, "there can be no dispute" about "CBRE's knowledge of the misappropriation" since "CBRE's Corporate Representative has admitted CBRE knew Cabot and Kroll were taking money from the properties that was not theirs to take." (ECF 253 at 8-9). That is, in fact, sharply disputed. Plaintiffs take a snippet of Rob Roy's testimony and other evidence entirely out of context to argue, incorrectly, that CBRE has admitted knowledge of Cabot's and Knoll's wrongdoing. (*See id.*; ECF 239 at 5-7; ECF 248 at 5-8). Read in context, even Mr. Roy made no such admission. (ECF 248 at 7-8 (quoting Deposition of Rob Roy (ECF 239-7) at 131-33)).

9

And regardless, this is not a proper basis for allowing improper expert opinion on CBRE's state of mind. Plaintiffs conflate expert admissibility issues with sufficiency of the evidence issues. It is the jury's job to hear and weigh the very evidence Plaintiffs claim already exists and to reach a conclusion as to what CBRE knew or did not know based on that evidence. The jury does not need an expert to tell it what to conclude, and the law does not allow it.

IV. **Larkin's Opinions About What CBRE Should Have Known Are Irrelevant.**

Plaintiffs' attempt to support Larkin's "should have known" opinions also fails. (ECF 253 at 10). This is an intentional tort case, and the sole negligence issue pleaded by Plaintiffs is whether CBRE should have known that its employee, Gloria Hernandez, was acting improperly with regard to the "misappropriation" by LeaseCo. Larkin's "should have known" opinions have no bearing on this. (*See* ECF 235 at 14).

Plaintiffs do not dispute this. Instead, they simply claim CBRE "has taken the position in this litigation" that it "could not have known" Cabot and Kroll were misappropriating monies through its expert, Lori Bluett, and thus Larkin's "should have known" opinions are relevant because they are "in direct response" to this. (ECF 253 at 10).

This argument turns reality on its head. As CBRE has made abundantly clear, it is *Bluett* who is a rebuttal witness *to Larkin*. Bluett's opinion is in direct rebuttal to Larkin's. (ECF 248 at 6-7). It is not the other way around. And, if Larkin does not testify, Bluett will not either.

## CONCLUSION

Larkin's proffered testimony is squarely framed in terms of CBRE's legal obligations and duties to the TIC investors under the contracts in this case and is "replete" with improper legal conclusions on ultimate issues. Eleventh Circuit precedent establishes such testimony should be excluded in its entirety to avoid intruding on both the court's and the jury's role.

Plaintiffs' desire to have Larkin bolster as an "expert" almost verbatim the legal arguments their counsel have developed and made in this case is not a reliable or proper use of an expert. The risk of misinforming or misleading the jury is far too great. Plaintiffs' belated attempt to re-work what are plainly impermissible legal conclusions on ultimate issues as nothing more than general testimony on general custom and practice in the property management industry fails even under a cursory reading of Larkin's actual opinions and testimony. Nor have Plaintiffs shown how Larkin's general real estate experience is a reliable basis for his opinions.

His opinions should be excluded in their entirety.

10

Dated: June 29, 2018

*s/ Thomas Meeks*
Thomas Meeks (314323)
Email: tmeeks@carltonfields.com
Yolanda P. Strader (70212)
Email: ystrader@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
100 SE Second Street, Suite 4200
Miami, Florida 33131
Tel: 305-530-0050
Fax: 305-530-0055

Sylvia H. Walbolt (33604)
Email: swalbolt@carltonfields.com
D. Matthew Allen (866326)
Email: mallen@carltonfields.com
Mariko Shitama Outman (106681)
Email: msoutman@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three at International Plaza
4221 w. Boy Scout Blvd. – Suite 1000
Tampa, Florida 33607-5780

***Co-Counsel for Defendants CBRE, Inc.***

Respectfully submitted,

*s/ Hardy L Roberts*
Hardy L. Roberts, III (0062545)
Email: hroberts@careyomalley.com
CAREY O'MALLEY WHITAKER
MUELLER ROBERTS & SMITH
712 S. Oregon Avenue
Tampa, Florida 33606

***Co-Counsel for Defendants CBRE, Inc.***

David B. Weinstein (FBN 604410)
Email: weinsteind@gtlaw.com
Christopher Torres (FBN 716731)
Email: torresch@gtlaw.com
Ryan T. Hopper (FBN 107347)
Email: hopperrr@gtlaw.com
Danielle M. Diaz (FBN 43704)
Email: diazd@gtlaw.com
Jillian M. Askren (FBN 121773)
Email: askrenj@gtlaw.com
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
Tel: 813-318-5700
Fax: 813-318-5900

Jeffrey Allan Hirsch (FBN 199850)
Email: hirschj@gtlaw.com
Greenberg Traurig, P.A.
401 E Las Olas Blvd., Suite 2000
Ft. Lauderdale, FL 33301
Tel: 954-768-8285
Fax: 954-765-1477

Jared E. Dwyer (FBN 104082)
Email: dwyerje@gtlaw.com
Greenberg Traurig, P.A.
333 SE 2nd Ave.
Miami, FL 33131
Tel: 305-579-0564
Fax: 305-579-0717

***Co-Counsel for Defendants CBRE, Inc.***

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing Motion with the Clerk of the Court through the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Thomas Meeks*
Attorney

## SERVICE LIST

Kevin P. Jacobs, Esq.
Email: kjacobs@homerbonner.com
Gregory J. Trask, Esq.
Email: gtrask@homerbonner.com
Peter Homer, Esq.
Email: phomer@homerbonner
HOMER BONNER JACOBS, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tel: 305-350-5100
**Counsel for Gloria Hernandez**

David R. Softness, Esq.
Email: david@softnesslaw.com
David R. Softness, P.A.
201 South Biscayne Boulevard, Suite 2740
Miami, Florida 33131
Tel: (305) 341-3111
**Counsel for Defendant, Actuarial Risk Management, Ltd.**

Jason P. Hernandez, Esq.
Email: jhernandez@stearnsweaver.com
Mary Barzee Flores, Esq.
Email: mbarzeeflores@stearnsweaver.com
Ryan T. Thornton, Esq.
Email: rthornton stearnsweaver.com
Joseph J. Onorati, Esq.
Email: jonorati@stearnsweaver.com
Eugene E. Stearns, Esq.
Email: estearns@stearnsweaver.com
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
150 West Flagler Street, Suite 2200
Miami, FL 33130
Tel: 305-789-3200
Fax: 305-789-3395
**Attorneys for Plaintiffs and the Class**