UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61218-CIV-DIMITROULEAS/SNOW

Cabot East Broward 2 LLC and
Cabot East Broward 34 LLC, individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.

Carlton P. Cabot, Timothy J. Kroll,
Cabot Investment Properties, LLC,
Cabot East Broward LeaseCo, LLC,
Cabot North Orange LeaseCo, LLC,
Cabot Oak Grove Asset Manager, LLC,
Cabot Trafalgar/Avion LeaseCo, LLC,
Cabot Cypress Creek LeaseCo, LLC,
Cabot North University LeaseCo, LLC,
CBRE, Inc., and Gloria Hernandez,

    Defendants.

**FINAL ORDER AND JUDGMENT
APPROVING SETTLEMENT WITH DEFENDANTS CBRE AND HERNANDEZ**

This matter came before the Court on Plaintiffs' Motion for Final Approval of Settlement and Entry of Final Order and Judgment (the "Motion") [D.E. 294]. That Motion requests final approval under Fed. R. Civ. P. 23 of the Settlement Agreement with Defendants CBRE, Inc. and Gloria Hernandez [D.E. 294-1], as modified by Court Order [D.E. 293] (the "Settlement"). In addition, the Motion also seeks final approval of Class Counsel's proposed method of allocating the settlement proceeds among individual Class Members, and other incidental relief. The Court having carefully reviewed the Motion and the other materials submitted in connection therewith, having conducted a hearing on November 9, 2018, and being otherwise fully advised in the premises, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

**A.     The Settlement**

1.     In May and August 2018, the parties participated in a pair of mediation sessions with the assistance of an experienced, neutral mediator – Brian F. Spector, Esq.

2.     Those mediation sessions resulted in the Settlement Agreement mentioned above, which was executed as of August 17, 2018 [D.E. 294-1].

3.     The key terms of the Settlement are as follows, with capitalized terms having the meanings defined in the Settlement Agreement:

- The Plaintiffs and Class agree to accept, and CBRE agrees to pay, a Settlement Amount of $100,000,000 to resolve the claims asserted against CBRE and Hernandez. *Id.* (¶ 8).

- The Settlement Amount has been paid into an Escrow Account established as a "qualified settlement fund" for the benefit of the Class. *Id.* (¶ 9).

- The claims asserted against CBRE and Hernandez are to be dismissed with prejudice as of the Effective Date of Settlement, which is defined as the earlier of: (i) the day after the deadline to file an appeal from the Final Order and Judgment, if no appeal as to the Settlement is filed; or (ii) the day after appellate rights as to the Final Order and Judgment have been exhausted, if an appeal as to the Settlement is filed and the approval thereof is affirmed. *Id.* (¶ 13).

- The Plaintiffs and other Class Members are also providing and receiving certain mutual releases of all claims, known or unknown, relating to the Florida Properties, upon the Effective Date of Settlement. *Id.* (¶ 17).

- Prior to the Effective Date of Settlement, the Settlement Amount may not be used for any purpose; however, any interest earned thereon may be used to pay necessary and reasonable administrative expenses, subject to this Court's prior approval. Upon the Effective Date of Settlement, however, CBRE shall have no right to reversion of any portion of the Settlement Amount, including any interest earned thereon. *Id.* (¶¶ 12, 16).

- Following the Effective Date of Settlement, monetary disbursements from the Settlement Amount shall be made for attorneys' fees, litigation costs, and Class Representative incentive awards, as directed by the Court. In addition, disbursements from the Settlement Amount and any interest thereon which is not needed to cover administrative and other expenses shall be made to the Class Members in accordance with a plan of allocation which the Court shall authorize. *Id.* (¶¶ 14, 19).

### B. Preliminary Approval and Notice of Settlement

4. On August 22, 2018, the Plaintiffs filed a motion seeking preliminary approval of the Settlement, as well as Class Counsel's proposed method of allocating settlement proceeds. The motion also requested the approval of Class Counsel's proposed Notice of Settlement, its proposed method of delivering the Notice to Class Members, and other relief [D.E. 288].

5. On August 24, 2018, the Court entered an Order granting the Plaintiffs' motion in all respects [D.E. 289].

6. Later that same day, Class Counsel sent the approved Notice to each individual Class Member via the approved method of delivery, first-class certified mail [D.E. 294-2, ¶ 37].

7. The form and content of the Notice, and its method of delivery, fully complied with the requirements of Rule 23 and due process.

8. The Notice disclosed all of the key terms of the Settlement Agreement in sufficient detail to permit each interested Class Member to evaluate the terms of the Settlement and the proposed plan of allocating the settlement proceeds among the various Class Members. It also enclosed a copy of the Settlement Agreement itself and advised the Class Members of their right to object and how to do so if they are inclined.

9. In addition, the Notice further disclosed that Class Counsel would be seeking (i) an award of reasonable attorneys' fees not to exceed one-third of the Settlement Amount, (ii) reimbursement of its out-of-pocket litigation costs, which total approximately $1.75 million, and (iii) incentive awards to the two Class Representatives in the amount of $50,000 each, in recognition of the time and effort they expended in pursuing the case on behalf of the Class. The Notice advised Class Members when that application was expected to be filed with the Court, how they may obtain a copy of it, and how they may submit objections thereto.

### C. Final Approval of Settlement

10. In accordance with Rule 23, the Court fully and finally approves the Settlement and so orders all of its terms.

11. For a district court to approve a class action settlement, it must determine that the proposed settlement is not the product of "fraud or collusion" between the parties and the terms are "fair, reasonable, and adequate." *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Ault v. Walt Disney World Co.*, 692 F.2d 1212, 1217 (11th Cir. 2012).

12. In *Bennett*, the Eleventh Circuit identified six factors relevant to determining whether a proposed settlement is "fair, reasonable, and adequate." Those six factors are: (1) the likelihood of success at trial; (2) the range of possible recovery for the class; (3) the range of possible recovery at which a settlement is fair, reasonable, and adequate; (4) the expected complexity, expense, and duration of the case; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See* 737 F.2d at 986.

13. The Court finds that the Settlement was not the product of fraud or collusion. Rather, it was the result of extensive, arms-length negotiations by counsel well-versed in class actions and other complex litigation, with the assistance of an experienced, neutral mediator, Brian F. Spector, Esq. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (finding arms-length requirement was met where "Class Counsel and counsel for Defendants [we]re all experienced lawyers highly skilled in class action work" and "Brian F. Spector, Esq., an experienced and well-respected mediator . . ., oversaw most of the settlement process"); *Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan*, 2011 WL 13173025, at *6 (S.D. Fla. July 12, 2011) (arms-length requirement met where "sophisticated practitioners" reached a settlement "in the presence and with the assistance of an experienced mediator"); *D'Amato v.*

*Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings [a]re free of collusion and undue pressure.").

14.     The Court further finds that the Settlement is fair, reasonable, and adequate, within the meaning of Rule 23.

15.     The first factor this Court must consider in evaluating whether the Settlement is fair, reasonable, and adequate is Plaintiffs' likelihood of success at trial. *Bennett*, 737 F.2d at 986. This factor favors approval of the proposed Settlement, as Plaintiffs' case was not without risk, and even if they were to succeed on one or more of their claims at trial there is no guarantee that they would recover the full amount of the Class' claimed compensatory damages – $139,596,957. *See Hugo*, 2011 WL 13173025, at *6 (citing "potential loss at the summary judgment stage" and "uncertain[ty]" as to "the amount of recoverable damages" as reasons to approve settlement); *Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) ("Plaintiffs likelihood of success is not certain in this case . . . [and] because success at trial is not certain for Plaintiff[s and the Class], this factor weighs in favor of accepting the settlement."); *Thorpe v. Walter Investment Mgt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) ("[E]ven though the motions to dismiss were defeated and the class certified, Plaintiffs faced risks in litigating this action to a verdict. . . . This factor therefore supports approval."); *Dorado v. Bank of America, N.A.*, 2017 WL 5241042, at *4 (S.D. Fla. March 24, 2017) ("[W]hile the Plaintiff and her counsel have expressed confidence in their ability to prevail in this action, BANA has expressed confidence in its defenses and provided every indication that in the absence of a settlement, it would mount a zealous defense. The Court notes that there are risks to the Plaintiff that are inherent in continuing this litigation.").

16. "The second and third factors, which are usually combined [in the analysis], require the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range." *Thorpe*, 2016 WL 10518902, at *3. Here, the possible range of recovery is bracketed by the Plaintiffs' and CBRE's respective damage calculations. The Plaintiffs' experts calculated the Class' damages to be $139,596,957, while CBRE's experts offered alternate calculations which estimated the Class' damages to be between $16,108,958 and $371,166. [D.E. 256-5, pp. 8-12; 256-13, pp. 66, 89].

17. Thus, in evaluating the second and third factors, the possible range of recovery is between $139,596,957 and $371,166.

18. These figures do not encompass any special damages, such as punitive damages; nor should they, as such damages typically are not considered when evaluating settlements. *See, e.g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 459 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ("[T]o argue that treble damages ought to be considered in a calculation of a base recovery range is to distort the entire theoretical foundation which underlies the settlement process. It requires defendants to admit their guilt for the purpose of settlement negotiations . . . which might well hinder the highly favored practice of settlement."); *In re Dennis Greenman Sec. Litig.*, 622 F. Supp. 1430, 1441 (S.D. Fla. 1985), *rev'd on other grounds*, 829 F.2d 1539 (11th Cir. 1987) ("The Court agrees with the rationale of the *Grinnell* court that potential treble recovery (or, for the same reason, punitive recovery) should not be superimposed as a yardstick for measuring the adequacy of a settlement, lest the settlement negotiation process be derailed before leaving the station."); *County of Monroe, Fla. v. Priceline.com Inc.*, No. 09-CV-10004-KMM, D.E. 215 (S.D. Fla. Sept. 3, 2010) ("In determining the reasonable range of settlements,

the Court gives little weight to the potential for punitive damages as these damages were significantly more speculative than the actual damages . . . .").

19. The Court finds that the Settlement is fair, reasonable, and adequate in light of the possible range of recovery in this action. The Settlement Amount – $100 million – equates to 71.6% of the Class' best-case recovery, which is far in excess of the norm in class actions. While it is possible that a jury might have awarded a larger sum, the Settlement Amount reflects a reasonable reduction in light of the potential risk of loss and the time that would have been required to obtain recovery through litigation.

20. The next factor this Court must consider is the anticipated complexity, expense, and duration of the litigation. This factor also strongly favors approval of the Settlement because the case is highly complex, would have been expensive to try, and would likely have dragged on for years of post-trial proceedings and appeals, thereby delaying any recovery for the Class.

21. "[C]lass action suits have a well deserved reputation as being most complex," *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), and the present case is no exception. Though the Plaintiffs and other Class Members were all victims of a single fraudulent scheme, they were investors in six separate office properties, each with its own set of circumstances. Since the amounts of money embezzled from each of the six office properties differed and the properties themselves are different, this case involves several complex issues of law and fact, particularly relating to damages. *See Hugo*, 2011 WL 13173025, at *9 (citing contested issues as to liability and uncertainties regarding damages as factors favoring approval of settlement).

22. Likewise, the anticipated expense of continuing the lawsuit also favors settlement. Class Counsel has already incurred approximately $1.75 million in out-of-pocket costs in prosecuting this case, and it expects the cost of trial preparation, trial, and ensuing proceedings

would have been substantial. That would only further reduce the Class' potential recovery herein. *See Thorpe*, 2016 WL 10518902, at *3 (citing "complex and costly expert testimony" and the fact that "in Class Counsel's experience, ongoing discovery and trial preparation would have substantially increased costs to the Class" as "support[ing] approval" of settlement).

23. Similarly, a victory for the Class at trial would almost certainly be followed by extensive post-trial motions, appeals, and other potential review, meaning it would likely be years before the Class obtained any recovery in this case, instead of weeks under the Settlement. *See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345-64 (S.D. Fla. 2011) ("Although this litigation has been pending for more than two years, recovery by any means other than settlement would require additional years of litigation in this Court and the appellate courts. . . . In contrast, the Settlement provides immediate and substantial benefits to [the class]."); *Dorado*, 2017 WL 5241042, at *4 (approving settlement of class claims in part because it "offers the class a certain and substantial recovery that will be distributed promptly").

24. The next factor the Court must consider is whether the Class Members have voiced any opposition to the proposed Settlement.

25. Here, no Class Members have submitted objections to the proposed Settlement, which speaks volumes about the fairness, reasonableness, and adequacy of the Settlement. *See Allapattah Services, Inc. v. Exxon Corp.*, 2006 WL 1132371, at *12 (S.D. Fla. Apr. 7, 2006) ("I can look to the lack of objection as a significant factor in determining whether the proposed Class Settlement is reasonable to the Class as a whole."); *Hugo*, 2011 WL 13173025, at *11 ("A small number of objections are convincing evidence of the fairness and adequacy of a proposed settlement.").

26. Finally, this Court must consider the stage of proceedings at which the settlement was achieved, "to ensure that [the] plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement." *Thorpe*, 2016 WL 10518902, at *4.

27. Here, the Plaintiffs and Class Counsel prosecuted the case for over two years before entering the proposed Settlement. During that time, they defeated motions to dismiss, obtained certification of the pending Class, conducted extensive fact and expert discovery, secured the cooperation of one of the Defendants, responded to motions for summary judgment, obtained favorable rulings on motions to exclude various expert testimony, and participated in a pair of all-day mediation sessions with the assistance of an experienced, neutral mediator. The Plaintiffs and Class Counsel thus had ample time and information to properly evaluate the merits of the case and weigh the benefits of the Settlement against proceeding to trial. *See Thorpe*, 2016 WL 10518902, at *4 (plaintiffs defeated a motion to dismiss, obtained certification of a class, and took critical depositions, including an opposing expert, giving them "a strong understanding of the strengths and weaknesses of their case, and thus an ample basis for making an informed judgment that the settlement is fair and reasonable"); *Dorado*, 2017 WL 5241042, at *5 (approving settlement made "after meaningful discovery," which provided plaintiff with "sufficient information to determine" if settlement was adequate).

28. In short, an evaluation of the *Bennett* factors strongly favors final approval of the proposed Settlement.

### D. Final Approval of the Proposed Plan of Allocation

29. The Court also grants final approval to Class Counsel's proposed method of allocating the settlement proceeds among individual Class Members.

30. Like the proposed Settlement itself, a method of allocating settlement proceeds among individual class members must be "fair, reasonable, and adequate" to be approved. *See, e.g., In re Chicken Antitrust Litig. American Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) ("[The fair, reasonable, and adequate] standard applies with as much force to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (same).

31. Whether a proposed method of allocation meets this standard turns on two factors – specifically, "whether [class] counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386 (S.D.N.Y. 2013) (citation omitted). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013) (citation omitted).

32. Here, Class Counsel's proposed plan of allocation has a reasonable, rational basis. It uses the Class' compensatory damage calculations to determine each Class Member's pro-rata share of the settlement proceeds.

33. To assist the Plaintiffs and the Class in evaluating their compensatory damages, Class Counsel engaged the services of two independent experts – Ronald A. Oxtal, MAI and Patrick F. Gannon, CPA, ABV, CFF, CVA. Mr. Oxtal prepared cash flows and appraisals projecting how each of the Florida Properties would have performed but for the embezzlement and what the current market value of each of the properties would be but for the embezzlement. Mr. Gannon then took that information and used it to perform a variety of forensic analyses. He concluded that, but for the wrongdoing, each of the Florida Properties would have generated

sufficient cash flow to survive the Great Recession and avoid the foreclosures which occurred. He also both identified and quantified the economic damages attributable to the embezzlement – as opposed to damages caused by the Great Recession – on a property-by-property basis. He concluded that the losses sustained by some properties were greater than others because the amounts embezzled from each property differed and the properties themselves are different.

34.     Class Counsel proposes to use Mr. Oxtal's and Mr. Gannon's damage calculations as the basis for allocating settlement proceeds among the Class.  Specifically, they propose that upon final approval of the Settlement, a formal claims process would be established through which individual Class Members may obtain a pro-rata share of the settlement proceeds in accordance with their respective ownership interests and the losses sustained by their properties, with pro-rata deductions for attorneys' fees, costs, and Class Representative incentive awards.

35.     Though the Notice of Settlement advised Class Members of their right to object to the proposed method of allocating settlement proceeds, no objections were submitted.

36.     The Court finds the proposed method of allocation to be a fair and equitable way to allocate the settlement proceeds among individual Class Members, as it recognizes that the losses sustained by some properties as a result of the embezzlement were determined by independent experts to be greater than others.  The proposed plan of allocation will ensure that no Class Member is undercompensated relative to its economic losses, and it will also ensure that no Class Member is overcompensated relative to its losses at the expense of other Class Members. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 386 ("A reasonable plan may consider the relative strength and value of different categories of claims.") (citations omitted).

### E. Dismissal of Claims and Releases

37. Upon the Effective Date of Settlement, each of the claims asserted in this action against Defendants CBRE and Hernandez shall be deemed dismissed with prejudice.

38. Likewise, upon the Effective Date of Settlement, the mutual releases documented in the Settlement Agreement shall be deemed effective.

### F. Entry of Final Judgment

39. In accordance with Federal Rule of Civil Procedure 54(b), the Court finds that there is no just reason to delay the entry of a final judgment as to the matters set forth herein. Thus, the Clerk of Court is directed to enter this Final Order and Judgment as a final judgment in this litigation forthwith.

### G. Reservation of Jurisdiction

40. Without affecting the finality of this Final Order and Judgment in any way, the Court hereby reserves continuing and exclusive jurisdiction over the interpretation, administration, and enforcement of the terms of the Settlement Agreement.

### H. Effect of Unfavorable Ruling on Appeal

41. If the portion of this Final Order and Judgment approving the Settlement is set aside on appeal, then Settlement Agreement ¶ 15 shall apply. Pursuant to that provision, any or all of the parties may elect to cancel or terminate the Settlement Agreement in its entirety. If a party elects to terminate the Settlement, the termination will become effective 30 days after service of the required Termination Notice. During that 30-day period, the parties shall use their best efforts to resolve any existing conflicts or deficiencies and reinstate the Settlement. If the parties fail to reinstate the Settlement, (a) the Settlement Agreement shall be null and void,

this Final Order and Judgment shall be vacated, and the parties shall be returned to their respective positions in the lawsuit as if the Settlement Agreement had never been entered, without prejudice to any rights, claims, or defenses asserted, with all statutes of limitation that had not previously expired are deemed tolled, and without the need to re-serve any process; and (b) CBRE shall be entitled to the immediate return of the entire Settlement Amount along with any interest earned on that amount which has not been used to pay necessary and reasonable administrative expenses.

**DONE AND ORDERED**, in Chambers in Fort Lauderdale, Broward County, Florida, on November 9, 2018.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record

- 13 -