UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61218-CIV-DIMITROULEAS/SNOW

Cabot East Broward 2 LLC and
Cabot East Broward 34 LLC, individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.

Carlton P. Cabot, Timothy J. Kroll,
Cabot Investment Properties, LLC,
Cabot East Broward LeaseCo, LLC,
Cabot North Orange LeaseCo, LLC,
Cabot Oak Grove Asset Manager, LLC,
Cabot Trafalgar/Avion LeaseCo, LLC,
Cabot Cypress Creek LeaseCo, LLC,
Cabot North University LeaseCo, LLC,
CBRE, Inc., and Gloria Hernandez,

    Defendants.

**ORDER GRANTING
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS,
AND CLASS REPRESENTATIVE INCENTIVE AWARDS**

This matter came before the Court on Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Costs, and Class Representative Incentive Awards [D.E. 295]. Having carefully reviewed the Motion and the Exhibits thereto, and being otherwise fully advised in the premises, it is **ORDERED** and **ADJUDGED** that the Motion is **GRANTED**.

The Court hereby awards Class Counsel attorneys' fees in the amount of $33,333,333, and reimbursement of costs in the amount of $1,728,947. The Court further grants each Class Representative – Cabot East Broward 2 LLC and Cabot East Broward 34 LLC – an incentive award in the amount of $50,000.

## I. CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

### A. Class Counsel is Entitled to an Award of Attorneys' Fees From the Common Fund Established Through the Settlement

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the requested attorneys' fees are authorized by law, under established judicial precedent. In *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the Court recognized that "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Id.* at 771. The Court also held that the calculation of attorneys' fees in such cases should be based upon a reasonable percentage of the common fund, as opposed to the "lodestar" method. *Id*. at 773-75. In fact, in this Circuit, "[t]he lodestar approach should not be imposed [even as] a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362-63 (S.D. Fla. 2011); *Wilson v. EverBank*, 2016 WL 457011, at *13, 19 (S.D. Fla. Feb. 3, 2016).

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee." *Camden*, 946 F.2d at 774. Rather, the amount of any fee "must be determined upon the facts of each case" after evaluating certain criteria. *Id*. at 774-75. That criteria includes the twelve *Johnson* factors, namely:

(1) the time and labor required;
(2) the novelty and difficulty of the questions involved;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the client; and
(12) awards in similar cases.

*Id.* at 772 n. 3 (citing *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-79 (11th Cir. 1974)). "Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, . . . and the economics involved in prosecuting a class action." *Id.* at 775. "In most instances, there will also be additional factors unique to a particular case, which will be relevant to the district court's consideration." *Id.*

While this Court must, of course, consider all of the pertinent factors in this case, the Eleventh Circuit has made clear that "a common fund is itself the measure of success" and is "the benchmark on which a reasonable fee will be awarded." *Id.* at 774 (citation omitted). In other words, "[the] monetary results achieved [here] predominate over all other criteria." *Id.* (citation omitted); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1363 (same).

"The district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1253 (S.D. Fla. 2016) (citation omitted).

### B. Class Counsel Should be Awarded Attorneys' Fees Equal to One-Third of the $100 Million Obtained For the Benefit of the Class

Here, an analysis of the relevant factors supports Class Counsel's request for attorneys' fees equal to one-third of the $100 million obtained for the Class – or $33,333,333.

#### 1. The Case Required Substantial Time and Labor

The Court finds that investigating and prosecuting this case required substantial time and labor. Class Counsel dedicated nearly 18,000 hours of professional time to the case over a period of roughly two-and-a-half years, to bring it to the point that meaningful recovery could be achieved for the benefit of the Class. [D.E. 295-1, ¶¶ 42-44 & App. 3].

Class Counsel's efforts in this regard included substantial pre-suit investigation, extensive legal research on critical issues, preparation of the original Class Action Complaint, overcoming motions to dismiss by Defendants CBRE, Hernandez, and Silverman, conducting

and responding to extensive discovery, litigating numerous discovery disputes, preparing an Amended Class Action Complaint, preparing the two Class Representatives for deposition and defending those depositions, deposing thirteen other fact witnesses in eight cities across the country, securing the cooperation of Defendant Silverman through settlement and obtaining informal discovery from him, obtaining certification of the Class and defeating a petition filed with the Eleventh Circuit seeking interlocutory review thereof, working with independent expert witnesses to secure testimony about topics relating to commercial real estate and damages, preparing those experts for deposition and defending their depositions, deposing each of CBRE's four expert witnesses, defeating motions to exclude the testimony of three expert witnesses and successfully moving to limit the testimony of certain defense experts, opposing CBRE's and Hernandez's motions for summary judgment, preparing for trial, and participating in two, all-day mediation sessions with a neutral mediator.  [*Id.* ¶¶ 17–40].

Thus, the first of the *Johnson* factors weighs in favor of granting the requested award. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8 (S.D. Fla. Oct. 17, 2016) (granting request for attorneys' fees equal to 33.3% of common fund where class counsel "devoted significant time and resources to researching, investigating, and prosecuting" the case).

It also bears noting that Class Counsel has committed to work with Class Members to facilitate the claims process, without additional compensation therefor. [D.E. 295-1, ¶ 46]. This additional undertaking is substantial, as the particular circumstances of each class member are always necessarily unique.  [*Id.* ¶¶ 46-47].  Thus, this Court and others have cited such an additional undertaking as an important factor in determining an award of attorneys' fees. *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216 (S.D. Fla. 2006) (recognizing that Stearns Weaver Miller's continued representation of the plaintiff class in connection with the claims process "support[ed] the application of a higher percentage award"); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already

expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

### 2.     The Relevant Questions Were Both Novel and Difficult

This Court must next consider whether the questions in the case were novel or difficult. The Court finds they were both. Class Counsel undertook this case knowing substantial hurdles would need to be overcome in order to obtain meaningful recovery for the benefit of the Class. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The difficulty of the legal and factual questions presented significant hurdles to achieving this settlement [for] the Class."). This case involved issues of first impression and issues as to which there was relatively little precedent to guide a decision. It also involved issues that were difficult, most notably, the calculation of damages sustained by each of the six commercial office properties at issue. The Class also had to overcome a number of affirmative defenses – including a statute of limitations defense, which, if successful, would have reduced the value of the case to zero.

In *Johnson*, the former Fifth Circuit noted that cases of first impression such as this "generally require more time and effort on the attorney's part," and "he should not be penalized for undertaking a case which may 'make new law.'" *Johnson*, 488 F.2d at 718. "Instead, he should be appropriately compensated for accepting the challenge." *Id.*

Here, Class Counsel should be rewarded not only for taking on the novel and difficult issues presented by this case despite substantial risk, but also for delivering an outstanding result in the face of those challenges, which will hopefully motivate others to do the same in the future. "Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs.*, 454 F. Supp. 2d at 1217.

### 3.     The Case Required the Skill of Highly-Talented Lawyers

The next relevant factor is whether the case required the skill of highly-talented lawyers. In *In re Checking Account Overdraft Litig.*, Judge King explained that cases which present

"novel and very complex issues" require "an extraordinary group of lawyers" to prosecute them. *See* 830 F. Supp. 2d at 1362-63.  Likewise, other federal courts have relatedly observed that "the quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (internal quotations and citation omitted).

The Court finds that the present litigation required the skill of highly-talented lawyers, and the quality of Class Counsel's representation in the case is evidenced by the result achieved – a settlement of $100 million, which translates to 71.6% of the Class' total claimed damages. *See In re Checking Account Overdraft Litig.*, 2013 WL 11319244, at *1 (class action settlement representing 51% of "the most probable recoverable damages" was an "excellent" result); *Thorpe*, 2016 WL 10518902, at *10 (describing class action settlement which equated to a mere 5.5% of the class' maximum possible recovery as "excellent").

Class Counsel also has a well-deserved reputation for successfully trying complex cases to conclusion and defending those outcomes on appeal, a factor which likely played into the Defendants' decision to avoid a trial in this case. [D.E. 295-1, ¶¶ 3-4 & App. 1].

### 4. Class Counsel Was Precluded From Other Employment

The next *Johnson* factor also favors granting Class Counsel's request for attorneys' fees. Class Counsel worked nearly 18,000 hours on this case over a period of roughly two-and-a-half years.  That necessarily precluded the principal attorneys involved from taking on other cases or pursuing other, meaningful employment.  [D.E. 295-1, ¶¶ 42-44 & App. 3].

### 5. The Requested Fee is Customary for a Case Such as This One

The Court must also assess whether the requested fee is customary for a case such as this, namely, a complex class action pursued on a pure contingency fee basis.  It is.

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F.

Supp. 2d 1334, 1340 (S.D. Fla. 2007). "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* at 1341.

Class Counsel's request for one-third of the settlement amount is well within that range, and it is also consistent with what courts routinely award in class actions, as discussed below.

### 6. Class Counsel Assumed Substantial Risk and Pursued This Case on a Pure Contingency Basis

Next, the Court must consider whether Class Counsel assumed substantial risk in pursuing the present litigation and whether it undertook the case on a pure contingency basis. The answer to both questions is "yes."

Class Counsel assumed substantial risk in pursuing this case by, among other things, undertaking to prosecute claims which, as noted above, presented novel and difficult issues and were subject to several affirmative defenses that could have reduced the value of the case to zero. Class Counsel's risk was also amplified by the fact that it agreed to prosecute those claims on a pure contingency basis, meaning it would not receive any compensation for its work or reimbursement for out-of-pocket expenses if the Class did not ultimately receive a recovery. The firm dedicated nearly 18,000 hours and invested nearly $1.75 million in funds, despite the possibility that it might receive nothing in return. [D.E. 295-1, ¶¶ 8, 42-44, 29-51 & App. 3, 4].

Where class counsel undertakes such risks on a pure contingency fee basis, as it did here, it "often justifies an increase in the award of attorney's fees." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)). In fact, this Court has recognized that the undertaking of such risk *alone* "can support a fee award of over 30% of the settlement fund." *Morgan*, 301 F. Supp. 3d at 1253 (citing *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *1-2 (S.D. Fla. Sept. 26, 2012), and *Waters*, 2012 WL 2923542, at *17, which awarded fees of 33% and 35%, respectively).

"If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money,

especially in light of the risks involved in recovering nothing." *Id.* at 1365 (citation omitted). Thus, "[t]he Court should give substantial weight to the contingent nature of Class Counsel's fees when assessing the fee request." *Thorpe*, 2016 WL 10518902, at *10.

In this case, the Court finds that Class Counsel's request for an award equal to one-third of the settlement fund is both reasonable and appropriate given the risks involved and the outcome achieved.

### 7. Time Limitations Also Favor Granting the Requested Fees

In evaluating the seventh *Johnson* factor, courts may consider any time limitation imposed by the client or by the circumstances of the case. Here, time was of the essence. The Class in this case consists of 179 entities which were beneficially owned primarily by elderly retirees who were both looking for and were dependent on a steady stream of income. Many of those investors were financially devastated by the loss of their Cabot investments. [D.E. 295-1, ¶¶ 14-16 & App. 2].

Cognizant of the Class' acute need for compensation, Class Counsel investigated and prosecuted this case on a very tight schedule for a matter of its magnitude and complexity. It worked diligently to advance the case so that it could be tried on schedule, and it opposed CBRE's request for a three-month continuance of the scheduled trial. [*Id.* ¶¶ 10-114, 17-19, 33]. The Court ultimately granted a shorter continuance, and the Settlement was achieved shortly thereafter, approximately one month prior to the new start of trial. [*Id.* ¶¶ 34-36].

### 8. The Amount Involved and the Results Obtained Both Support the Requested Award

The next factor which must be considered is the amount involved and the results obtained. In *Camden*, the Eleventh Circuit explained that "a common fund is *itself* the measure of success"; thus, "[the] monetary results achieved [in a particular case] *predominate* over all other criteria." 926 F.2d at 774 (emphasis added) (citation omitted). Stated another way, the amount involved and results obtained is the "most important factor" in determining an award of attorneys' fees. *Allapattah Servs.*, 454 F. Supp. 2d at 1204-05.

Here, the amount involved was substantial, and the result obtained was exceptional. The Class invested a total of $85,203,603 in the six Florida Properties and independent experts calculated their total economic damages as a result of the embezzlement to be $139,596,957. The settlement amount exceeds the Class' investment amount by roughly $15 million and translates to 71.6% of the Class' best-case scenario on damages.

That is well above the norm. Empirical studies of securities cases, for instance, show that class action settlements typically recover substantially less than 71.6% of class members' losses. The usual recovery in such actions is less than 10% of the class members' estimated losses. *See, e.g., In re Rite Aid Corp. Securities Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (recognizing that "a recent study shows that settlements since 1995 of securities class actions 'have recovered between 5.5% and 6.2% of the class members' [total] estimated losses'"); Laarni T. Bulan, Ph.D, et al., *Securities Class Action Settlements – 2016 Review and Analysis* 8 (Cornerstone Research 2016) (concluding that, from 2006 to 2016, the median settlement amount in securities class actions was approximately 2.5% of the class members' total estimated losses).

In fact, as noted above, this Court has previously characterized settlements amounting to less than 71.6% of the class' total losses as "excellent" or the like. *See Wolff*, 2012 WL 5290155, at *4, *adopted in toto*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (awarding attorneys fee equal to one-third of settlement amount which translated to roughly 65% of Class' total estimated damages); *In re Checking Account Overdraft Litig.*, 2013 WL 11319244, at *1 (settlement representing 51% of "most probable recoverable damages" was "excellent" result); *Thorpe*, 2016 WL 10518902, at *10 (settlement which equated to a mere 5.5% of the class' maximum possible recovery was "excellent").

In short, the "predominant" and "most important" factor in the analysis supports the requested award of attorneys' fees in this case.

### 9. The Experience, Reputation, and Ability of the Lawyers Supports the Requested Award

The ninth *Johnson* factor requires the Court to consider Class Counsel's experience, reputation, and ability, along with that of Defendants' counsel. This factor also favors granting the requested award of fees, as both Class Counsel and opposing counsel are experienced and highly-respected lawyers with proven records of significant accomplishments.

Class Counsel is the firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., a full-service law firm with over 115 attorneys in multiple cities, along with a considerable team of paralegals, data management specialists, other support staff, and trial graphics professionals. The firm has extensive class action and complex litigation experience on both the plaintiffs' and defendants' side, which gives its attorneys unique knowledge and insight into such matters. The firm has also achieved success in numerous complex cases, including what was at the time the largest compensatory jury verdict in the history of class actions – roughly $1.2 billion. *Allapattah Services, Inc., et al. v. Exxon Corporation*, No. 1:91-cv-00986-GOLD (S.D. Fla.). The firm's achievements in that case were described by Judge Gold as follows:

> No class action of which I am aware has approached the remarkable recovery achieved in this case, through two trials, a jury verdict, a direct appeal, and an appeal to the United States Supreme Court . . . . Nor has any class action of this magnitude . . . required a more dedicated effort on the part of Class Counsel . . . . The results achieved in this case, and the obligations imposed upon Class Counsel going forward, are simply unprecedented.

*Allapattah Servs.*, 454 F. Supp. 2d at 1210; [D.E. 295-1, ¶¶ 3-4 & App. 1].

Defendants CBRE and Hernandez were also represented by experienced attorneys with reputations for achieving outstanding results. CBRE was represented by seven lawyers from the firm of Greenberg Traurig, P.A., five lawyers from Carlton Fields Jorden Burt, P.A., and one lawyer from Carey, O'Malley, Whitaker, Mueller, Roberts & Smith; while Hernandez was represented by three lawyers from Homer Bonner Jacobs, P.A. Each of those firms is recognized in the legal community for its expertise and skill, as are the individual lawyers who were principally responsible for the case. [D.E. 295-1, ¶ 45].

**10.     The Case was Undesirable**

Next, the Court must consider the "undesirability" of the case, which could be due to "any number of things" but is best demonstrated by the degree to which the case was attractive to other law firms.  *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001).  Like the preceding factors, this one favors approval of the requested award of fees, as the record reflects that multiple law firms passed on the case before it reached Class Counsel.

After the Plaintiffs ceased receiving distributions from their Cabot property 10 years ago, they contacted multiple law firms in search of assistance.  Most of the firms they spoke with declined the representation altogether, and those which accepted the representation tended to limit their services to fighting foreclosure actions or raising capital for a potential loan restructuring.  None of the firms were willing to undertake this action, much less on a pure contingency basis, as Class Counsel did.  [D.E. 295-1, ¶¶ 7, 54, 56].

"[C]ounsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1336.

**11.     The Nature and the Length of the Professional Relationship With the Client is a Neutral Factor**

The next factor to be considered is neutral.  Class Counsel did not have a prior relationship with the Class Representatives or any other Class Member.  [D.E. 295-1, ¶ 9].

**12.     The Requested Fee is Consistent With Awards in Similar Cases**

The final *Johnson* factor requires this Court to consider whether the requested fee is consistent with awards in similar cases.  It is.

When *Camden* was decided 27 years ago, the "'bench mark' percentage fee award" was considered to be 25%, though the Court made clear that there "is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  946 F.2d at 774-75.  According to recent empirical studies, however, the average percentage fee award in this Circuit is now at or above 30%, as "courts within this Circuit have routinely awarded attorneys' fees of

*33 percent or more* of the gross settlement fund." *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (emphasis added) (citing cases); *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is consistent with the trend in this Circuit."); *Morgan*, 301 F. Supp. 3d at 1257-8 ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . ."); Ted Eisenberg, Geoff Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 NEW YORK UNIVERSITY LAW REVIEW 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%).

In fact, Class Counsel identified at least 19 cases from this Circuit in which attorneys' fees amounting to 33% or more of a settlement fund were awarded, most of which were decided within the last ten years:

- *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *16 (N.D. Ala. July 17, 2012) (35% of $2.5 million);

- *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (35% of $25 million);

- *In re Managed Care Litig. v. Aetna*, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (35.5% of $310 million, including $6.5 million in costs);

- *Barba v. Shire U.S., Inc.*, No. 13-cv-21158, D.E. 441 (S.D. Fla. Dec. 2, 2016) (35% of $14,750,000);

- *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297-98 (11th Cir. 1999) (33.3% of $40 million);

- *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (33.3% of $ 77.5 million);

- *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md–01317–PAS, D.E. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (33.3% of $75 million);

- *Dear v. Q Club Hotel, LLC*, 2018 WL 1830793, at *3 (S.D. Fla. Mar. 14, 2018) (33.3% of $1.2 million common fund plus $10 million in additional benefits);

- *Legg v. Spirit Airlines, Inc.*, 2016 WL 8670162 at *3 (S.D. Fla. Aug. 2, 2016) (33.3% of $7.5 million);

- *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) (33.3% of $14.5 million);

- *Wood v. J Choo USA, Inc.*, 2017 WL 4304800, at *5 (S.D. Fla. May 9, 2017) (33.3% of $2.5 million);

- *Morefield v. NoteWorld, LLC*, 2012 WL 1355573, at *5 (S.D. Ga. Apr. 18, 2012) (33.3% of $1,040,000);

- *Diakos v. HSS Sys., LLC*, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 5, 2016) (33.3% of $575,000);

- *Duque v. 130 NE 40th St., LLC*, 2016 WL 7442797, at *3 (S.D. Fla. Jan. 27, 2016) (33.3% of $475,000);

- *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (awarding "customary fee" of 33.3% of $2,020,000);

- *Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *10 (N.D. Ga. May 19, 2014) (33% of $7,750,000);

- *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (33% of $5 million);

- *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (33% of $3.2 million); and

- *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (33% of $300,000).

Indeed, "courts nationwide . . . have repeatedly awarded fees of 30 percent or higher [even] in so-called 'megafund' settlements," which typically refers to settlements amounting to $100 million or more. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365-66; *see also Allapattah Servs.*, 454 F. Supp. 2d at 1185 (awarding fee of 31.33% of $1.075 billion); *In re Initial Pub. Off. Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (33.3% of $510 million); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. July 16, 2001) (33.% of $365 million); *In re Busporine Antitrust Litig.*, No. 01-1410 (S.D.N.Y. Apr. 11, 2003) (33.3% of $220 million); *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. Apr. 9, 2004) (33.3% of $175 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (36% of $120 million).

In the present case, the Court finds that an award of one-third is reasonable under the circumstances and should be granted.

### 13. Other Pertinent Factors Support the Requested Award

At least two of the "other pertinent factors" identified above are also relevant in this case, namely, the "time required to reach a settlement" and "whether there are any substantial objections

by class members or other parties to the settlement terms or the fees requested by counsel." *Camden*, 946 F.2d at 775.

Here, despite Class Counsel's efforts to accelerate the resolution of this proceeding, an early settlement was neither advisable nor possible. This was not a case where counsel negotiated for a quick, cheap settlement. The settlement here came only after two years of vigorously-contested litigation, on the virtual eve of trial. [D.E. 295-1, ¶¶ 34-36].

Likewise, although the Class received direct notice of Class Counsel's intention to request attorneys' fees equal to one-third of the Settlement Amount, plus reimbursement of costs and Class Representative incentive awards, no Class Member submitted an objection either to the request for fees, or the request for costs and incentive awards. [D.E. 296-1, ¶¶ 4-8].

\* \* \*

In short, the Court finds that an evaluation of the *Johnson* and *Camden* factors supports an award of attorneys' fees in the amount sought, and it is therefore granted.

**II.     CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS**

As noted above, Rule 23 also permits courts presiding over class actions to award "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under this rule, courts regularly reimburse class counsel for their out-of-pocket litigation costs when a request for reimbursement is "supported by adequate documentation, and the Court finds the costs to be reasonable and necessary to the representation of the class." *Dear v. Q Club Hotel, LLC*, 2018 WL 1830793, at \*5 (S.D. Fla. Mar. 14, 2018); *see also Legg v. Spirit Airlines, Inc.*, 2016 WL 8670162 at \*3 (S.D. Fla. Aug. 2, 2016) (same).

Here, Class Counsel invested $1,728,947 of its own money to fund out-of-pocket costs and has submitted an itemized schedule detailing such costs. [D.E. 295-1, ¶¶ 49-51 & App. 4]. The Court finds that all of those costs were reasonable and necessary to the representation of the Class and should be reimbursed from the settlement fund. *See, e.g.,* Fed. R. Civ. P. 23(h); *Dear v. Q Club Hotel,* 2018 WL 1830793 at \*5 (reimbursing class counsel for out-of-pocket costs related to, *inter alia*, experts, legal research, travel and lodging, the purchase of transcripts,

mediation, class notice, trial support, and postage/delivery); *Gevaerts v. TD Bank*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (reimbursing counsel for costs related to experts, online research, travel, document review, copying, mediation, etc.); *In re Checking Account Overdraft Litig.*, 2015 WL 12641970, at *18 (S.D. Fla. May 22, 2015) (reimbursing counsel for costs related to experts, the purchase of transcripts, mediation, etc.).

### III. THE CLASS REPRESENTATIVES ARE ENTITLED TO INCENTIVE AWARDS

Finally, the Motion also asks this Court to grant each of the two named Plaintiffs herein – the Class Representatives – an incentive award in the amount of $50,000, in recognition of the actions they took to protect the Class, the time and effort they expended in pursuing the case, and the personal financial risk they assumed by agreeing to be named as plaintiffs in this action.

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David* v. *Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Such awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action." *Allapattah Servs.*, 454 F. Supp. 2d at 1218. "Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1357.

Courts generally consider a series of factors in determining an incentive award, including: "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.* (citation omitted). Here, an analysis of each of these factors supports approval of the requested incentive awards, which are modest in the context of the case.

The two Class Representatives are limited liability companies which are ultimately managed by individuals. Cabot East Broward 2 LLC, for instance, is managed by Stephen Souza, a 65 year-old resident of the State of Massachusetts, while Cabot East Broward 34 LLC is managed by Donald I. Hauptman, an 83 year-old resident of California. [D.E. 295-1, ¶ 53].

Each invested in the Cabot property commonly referred to as East Broward Corporate Center, along with 33 others. [*Id.* ¶ 53].

After the East Broward investors ceased receiving distributions in the latter part of 2008, Messrs. Souza and Hauptman took an active role in determining potential courses of action. They regularly caucused with other East Broward investors to explore possible solutions; they conducted research; and they solicited the assistance of lawyers and other professionals while most investors sat quietly on the sidelines. [*Id.* ¶ 54]. Mr. Hauptman also traveled from California to Fort Lauderdale on three occasions in order to visit the East Broward property and – he had hoped – gain a better understanding of why it was failing. [*Id.* ¶ 54].

During 2011, Messrs. Souza and Hauptman each volunteered to serve as members of the East Broward Corporate Center Steering Committee, an informal group of four investors which assumed a leadership role to investigate solutions to their building's financial difficulties. [*Id.* ¶ 55]. Neither received any compensation for years of service on the Steering Committee, which involved hundreds of hours of work. [*Id.* ¶ 55].

From 2008 through the present, the Class Representatives undertook various actions for the benefit of the East Broward investors, and later the Class as a whole, including:

- They helped coordinate decision-making among the East Broward investors and raise funds from them, as needed;

- They sought the assistance of several lawyers and financial professionals, all in an effort to investigate why their property was failing, how it could be saved, and whether others could be held accountable for their losses;

- They worked closely with the lawyers who agreed to represent them and persisted in their search for solutions when their lawyers were unable to save the property or develop other avenues to recoup their losses;

- They ultimately engaged Class Counsel, agreed to serve as named plaintiffs on behalf of a then-putative Class, and worked closely with counsel for months to develop the claims asserted in this action;

- They reviewed the complaints filed in this matter along with all other major filings, and they participated in numerous telephone conferences over the course of the litigation;

- They helped respond to numerous interrogatories and helped gather significant quantities documents for production in discovery;

- They also reviewed large volumes of documents to help refresh their recollections of events and communications which occurred years earlier;
- They traveled from Massachusetts and California to Miami to prepare for deposition – in each case over the course of multiple days – and later to be deposed; and
- They also traveled to Miami in order to participate in two all-day mediation sessions, the second of which resulted in the Settlement with CBRE and Hernandez.

[*Id.* ¶ 56].

The Class Representatives also assumed personal financial risk in prosecuting this case on behalf of the Class. If the Defendants had ultimately prevailed, the Class Representatives could have been held responsible for the payment of Defendants' costs. *See* Fed. R. Civ. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party.").

Courts routinely grant incentive awards to class representatives in similar circumstances. In this case, however, an incentive award is particularly appropriate, as the Class Representatives conferred significant benefits on the Class. Without their efforts, the Class would not have obtained any recovery in this proceeding. Instead, the Class will receive the benefit of a settlement in the amount of $100 million, which translates to 71.6% of their total damages.

In that context, the modest incentive awards sought here are more than reasonable. Together, the requested awards total $100,000, or 0.1% the amount recovered for the Class, which is well within the range of incentive awards in other cases. *See, e.g., Allapattah Servs.*, 454 F. Supp. 2d at 1218 ($1.766 million awarded, representing 1.5% of settlement amount); *Ingram v. The Coca–Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding each class representative an incentive award of $300,000 from a settlement of over $100 million in light of "the magnitude of the relief the Class Representatives obtained on behalf of the class"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 WL 11319972, at *4 (N.D. Ga. Mar. 4, 2008) ($100,000 incentive award equaled 1.6% of the settlement); *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ($50,000 to both class representatives

from a settlement of $10.5 million); *Benzion v. Vivint, Inc.*, 2015 WL 11143078, at *2-3 (S.D. Fla. Feb. 23, 2015) ($20,000 incentive award equaled 0.3% of settlement amount); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-36 (E.D. Mich. 2003) ($75,000 incentive award from a settlement of $80 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, D.E. 626 at 7 ($35,000 incentive award from a settlement of $77.5 million); *Helmick v. Columbia Gas Transmission*, 2010 WL 2671506, at *3 (S.D. W. Va. July 1, 2010) ($50,000 incentive award from a settlement of $450,000); *Carlson v. Fedex Ground Package Sys., Inc.*, 2016 WL 3856179 (M.D. Fla. July 15, 2016) ($15,000 incentive award equaled 0.1% of settlement amount).

As in each of those cases, the Court finds that two Class Representatives here should be rewarded for what they have helped achieve, both to compensate them for their efforts and to encourage others to do the same in future actions. The Court thus awards each Class Representative an incentive award in the amount of $50,000.

## CONCLUSION

For the foregoing reasons, the Court hereby awards Class Counsel attorneys' fees in the amount of $33,333,333, and reimbursement of litigation costs in the amount of $1,728,947. The Court further grants Cabot East Broward 2 LLC and Cabot East Broward 34 LLC an incentive award of $50,000 each. The Escrow Agent shall disburse all such sums from the Escrow Account upon the Effective Date of Settlement, without need for further Court order.

The Clerk is hereby **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED**, in Chambers in Fort Lauderdale, Broward County, Florida this 9th day of November, 2018.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record