**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-61218-CIV-DIMITROULEAS/SNOW**

Cabot East Broward 2 LLC and
Cabot East Broward 34 LLC, individually
and on behalf of all others similarly situated,

     Plaintiffs,

v.

Carlton P. Cabot, Timothy J. Kroll,
Cabot Investment Properties, LLC,
Cabot East Broward LeaseCo, LLC,
Cabot North Orange LeaseCo, LLC,
Cabot Oak Grove Asset Manager, LLC,
Cabot Trafalgar/Avion LeaseCo, LLC,
Cabot Cypress Creek LeaseCo, LLC,
Cabot North University LeaseCo, LLC,
CBRE, Inc., Gloria Hernandez,
and Harry L. Silverman,

     Defendants.

**PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT
AGAINST THE CABOT DEFENDANTS**

Plaintiffs Cabot East Broward 2 LLC and Cabot East Broward 34 LLC hereby move pursuant to Federal Rule of Civil Procedure 55(b)(2) for the entry of a Final Default Judgment against Defendants Carlton P. Cabot, Timothy J. Kroll, Cabot Investment Properties, LLC, Cabot East Broward LeaseCo, LLC, Cabot North Orange LeaseCo, LLC, Cabot Oak Grove Asset Manager, LLC, Cabot Trafalgar/Avion LeaseCo, LLC, Cabot Cypress Creek LeaseCo, LLC, and Cabot North University LeaseCo, LLC (collectively, the "Cabot Defendants").

## INTRODUCTION

The Plaintiffs and the Class were investors in six commercial properties in Florida and became the victims of a lengthy multi-million-dollar embezzlement scheme committed by Defendants Carlton P. Cabot and Timothy J. Kroll, through corporate entities they controlled. Those six properties are collectively referred to as the "Florida Properties" and consist of:

| | |
|---|---|
| East Broward Corporate Center | 100 and 110 East Broward Blvd, Ft. Lauderdale, FL 33301 |
| Cypress Creek Tower | 800 West Cypress Creek Road, Ft. Lauderdale, FL 33309 |
| Trafalgar / Avion | 5300 N.W. 33rd Avenue and 2200 N.W. 50th Street, Ft. Lauderdale, FL 33309 |
| North University Preferred Exchange | 3111 North University Drive, Coral Springs, FL 33065 |
| North Orange Wachovia Tower | 20 North Orange Avenue, Orlando, FL 32801 |
| Oak Grove | 7575, 7585, and 7595 Baymeadows Way, Jacksonville, FL 32256 |

The Class Members are referred to as "TIC Investors" as each held a tenant-in-common interest in one of the six Florida Properties.

In 2015, Cabot and Kroll were indicted for their crimes and each later pled guilty to embezzling millions of dollars from the Florida Properties and other similar TIC investments. They were both then sentenced to lengthy prison terms.

In the present case, the Plaintiffs and the Class sued Cabot, Kroll, and their entities, as well as a variety of other parties who participated or assisted in the embezzlement scheme. The most notable of those other parties were Defendants CBRE, Inc. and Gloria Hernandez. CBRE was the property manager of the six properties when the embezzlement scheme began, and it subsequently hired Hernandez to be the on-site manager of two of the six properties and assist in the supervision of the others.

The Cabot Defendants never appeared in the action and were each ultimately defaulted. The litigation then continued for approximately two years before a settlement was achieved with CBRE and Hernandez.

In that settlement, the Plaintiffs and Class recovered $100 million, which represented 71.6% of the economic damages they sustained as a result of the embezzlement.  [D.E. 294]. This motion seeks the entry of a Final Default Judgment against Cabot, Kroll, and their entities for the balance of those damages, *i.e.*, $39,596,957.

## BACKGROUND

### A.     Relevant Procedural History

The Plaintiffs filed their Class Action Complaint in this matter on June 7, 2016.  [D.E. 1]. That Complaint alleged four causes of action against the Cabot Defendants, namely, Conversion, Breach of Fiduciary Duty, Constructive Fraud, and Civil Conspiracy.  [*Id.* at pp. 33-36 & 47-49]. It also alleged similar claims against CBRE and Hernandez for Aiding and Abetting Conversion, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Constructive Fraud, Aiding and Abetting Constructive Fraud, and Civil Conspiracy.  [*Id.* at pp. 37-43 & 47-49].

The Cabot Defendants were all formally served with process, or waived such service, but they never appeared in the action and Clerk's Defaults were ultimately entered against them. [D.E. 22, 26-32, 43-44, 53, 70-76].  CBRE and Hernandez, by contrast, filed a Motion to Dismiss the claims against them which was denied in a lengthy written order.  [D.E. 33, 84].

The Plaintiffs then filed an Amended Class Action Complaint which clarified certain allegations and added a demand for punitive damages against CBRE.  [D.E. 163].

On March 21, 2018, this Court granted Plaintiffs' Motion for Class Certification and certified a Class consisting of the 179 limited liability companies through which investments were made in the Florida Properties.  *See* Order Granting Mot. for Class Certification [D.E. 203]. The Court also certified six Sub-classes for management purposes on the issue of damages – one for each property – to enable damages to be determined on a property-specific basis.  [*Id.*] In addition, the Court appointed the Plaintiffs' managing members as Class Representatives and Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. as Class Counsel.  [*Id.*]

On April 2, 2018, this Court approved the parties' joint proposed Notice to the Class in accordance with Fed. R. Civ. P. 23(c)(2)(B) [D.E. 211], and between April 4 and 5, 2018, the Notice was mailed to all Class Members.  None opted out of the Class.  [D.E. 294-2, ¶ 19].

On April 4, 2018, CBRE and Hernandez jointly petitioned the Eleventh Circuit for permission to file an interlocutory appeal of the Order Granting Motion for Class Certification. That Petition was denied on May 17, 2018.  [D.E. 231].

On April 16, 2018, CBRE and Hernandez also filed Motions for Summary Judgment as to the claims asserted against them and certain of their affirmative defenses.  [D.E. 214, 216].

On June 8, 2018, the Plaintiffs and CBRE each filed motions to exclude or preclude certain expert testimony proffered by the other. In July 2018, this Court issued a series of Orders which granted certain of the motions in limited part but denied them in all respects material to the present filing. [D.E. 281, 282, 283, 284].

On August 3, 2018, the Plaintiffs and Class achieved a mediated settlement with CBRE and Hernandez, the terms of which were documented in a Memorandum of Understanding, subject to Court approval. [D.E. 285]. Those parties then worked cooperatively to prepare a Settlement Agreement and proposed Notice of Settlement. [D.E. 294-2, ¶ 24].

The Motions for Summary Judgment were fully briefed and pending a decision when the settlement was reached and were subsequently denied as moot. [D.E. 286].

On November 9, 2018, this Court entered a Final Order and Judgment approving the settlement, and it also entered a separate Order approving a proposed Claims Process. [D.E. 299, 300].

That Claims Process has since been completed, final disbursements have been made, and all that remains to be done to conclude the case is:

    (a)    The entry of Final Default Judgments against the Cabot Defendants for the compensatory damages incurred beyond the settlement amount; and

    (b)    Under the separate approved settlement with Defendant Harry Silverman, the claims against Mr. Silverman which were previously dismissed without prejudice must then be dismissed with prejudice.

[D.E. 336].

### B. The Plaintiffs' and Class' Damages

In Florida, the goal of compensatory damages in tort actions such as the present case is "to restore the victim to the position he would be in had the wrong not been committed." *Gregg v. U.S. Industries, Inc.*, 887 F.2d 1462, 1467 n. 4 (11th Cir. 1989) (citations omitted). Thus, consistent with that principle, the Plaintiffs' and the Class' sought recovery pursuant to the "benefit-of-the-bargain" theory of damages. *Id.* at 1466 & 1467 n.4.

In order to assist the Plaintiffs and the Class in evaluating their compensatory damages, Class Counsel engaged the services of two independent experts, namely, Ronald A. Oxtal, MAI and Patrick F. Gannon, CPA, ABV, CFF, CVA. Mr. Oxtal prepared cash flows and appraisals projecting how each of the Florida Properties would have performed but for the embezzlement,

and what the market value of each of those properties would be but for the embezzlement. Mr. Gannon then took that information and used it to perform a variety of forensic analyses. He concluded that, but for the wrongdoing, each of the Florida Properties would have generated sufficient cash flow to survive the Great Recession and avoid the foreclosures which occurred. He also both identified and quantified the economic damages attributable to the embezzlement – as opposed to damages caused by the Great Recession – on a property-by-property basis.

Though Messrs. Oxtal and Gannon used the same methods to assess the damages sustained by each property, the process was extraordinarily time-consuming and complicated. That is because the amounts embezzled from each property differed and the properties themselves are different, all of which affected the amount of damages sustained.

Together, Mr. Oxtal, Mr. Gannon, and their respective teams dedicated over 4,000 hours to sorting through the above differences and assessing the damages sustained by each property. They also prepared lengthy reports detailing their findings, which collectively total more than 1,000 pages including exhibits. [D.E. 256-3, 256-5].

With the aid of Mr. Oxtal's cash flows and appraisals, Mr. Gannon determined that the Class suffered benefit-of-the-bargain losses as a result of the embezzlement in the form of unpaid base rents, lost reserves, and lost equity. He found the losses sustained by some properties were greater than others, which was not surprising in light of the differences referenced above. Specifically, he calculated the economic damages attributable to the embezzlement as follows:

| Property | Economic Damages Attributable to Embezzlement |
|---|---|
| East Broward Corporate Center | $68,887,732 |
| Cypress Creek Tower | $5,669,651 |
| Trafalgar / Avion | $9,011,276 |
| North University / Preferred Exchange | $20,244,526 |
| North Orange Wachovia Tower | $22,401,393 |
| Oak Grove | $13,382,379 |
| Total | $139,596,957 |

[D.E. 256-5, pp. 8-12].

The Plaintiffs and Class recovered $100 million of that amount in the settlement with CBRE and Hernandez, leaving a balance of $39,596,957. [D.E. 299]

## MEMORANDUM OF LAW

### A.     Applicable Legal Standards

Federal Rule of Civil Procedure 55 prescribes the process for obtaining defaults and judgments thereon. Here, the requisite defaults have already been entered under Rule 55(a), and the matter is thus ripe for the entry of a default judgment under Rule 55(b).

Such relief is "entirely appropriate and within the court's sound discretion to render where [as here] the defendant has failed to defend or otherwise engage in the proceedings." *Charter Sch. Capital, Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc.*, 2015 WL 4169708, at *1 (S.D. Fla. July 10, 2015) (citations omitted).

The claimant is not automatically entitled to recover upon the entry of a clerk's default; however, the defaulted defendant *is* deemed to have admitted "well-pleaded allegations of fact." *Id.*; *see also Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015). The District Court must then determine whether those "well-pleaded allegations of fact" provide "a sufficient basis" for a judgment. *Id.* The term "sufficient basis" has been interpreted "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* In other words, the operative pleadings must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

If that condition is met, "the Court must ascertain the appropriate amount of damages and enter final judgment in that amount." *Suntrust Bank v. Ramsden*, 2011 WL 5508817, at *1 (S.D. Fla. Nov. 8, 2011). The Court may conduct an evidentiary hearing on damages if necessary; however, "[w]here all the essential evidence to determine damages is on the paper record, an evidentiary hearing . . . is not required." *Id.*; *Charter Sch.*, 2015 WL 4169708 at *4 (same).

### B.     There is a Sufficient Basis in the Pleadings for the Proposed Judgment

The Plaintiffs' Amended Class Action Complaint includes detailed factual allegations concerning the Cabot Defendants' embezzlement scheme and its effect on the Florida Properties. [D.E. 163, ¶¶ 2-5, 21-24, 28-31, 39-42, 46, 55-136, 209-216, 219-229, 232-236, 336-340]. Those detailed factual allegations speak for themselves and are more than sufficient to permit a reasonable inference of liability for the claims asserted against the Cabot Defendants herein. [*Id.* ¶¶ 207-340].

Indeed, Cabot and Kroll each expressly *acknowledged* such liability in connection with their guilty pleas. They admitted having "engaged in a scheme to defraud" their investors by:

(1) "repeatedly caus[ing] funds to be transferred out of the LeaseCo Subsidiaries' bank accounts . . . before the Property Managers could use the funds to pay for required expenditures – such as the operating expenses of the TIC properties and 'base rent' disbursements"; and

(2) "concealing the misappropriations by providing false and misleading financial reports and other information to the TIC Investors."

[D.E. 163, ¶¶ 4, 132-36; D.E. 226-61, 226-62, 226-63, 226-64, 226-65].

Thus, we respectfully submit that the Amended Class Action Complaint herein provides a sufficient basis for a default judgment against the Cabot Defendants.

### C. The Record Contains Ample Evidence of the Amount of Damages Incurred, Obviating the Need for an Evidentiary Hearing on That Issue

In the second portion of the inquiry under Rule 55(b), the District Court must determine the appropriate amount of monetary damages to be awarded in the proposed default judgment. Here, the record contains ample evidence of the damages incurred by the Class as a result of the Cabot Defendants' embezzlement scheme. That evidence includes the expert reports of Messrs. Oxtal and Gannon referenced above, as well as their sworn depositions in this matter, all of which were previously filed with the Court. [D.E. 256-3, 256-4, 256-5, 256-6].

With the benefit of Mr. Oxtal's cash flows and appraisals, Mr. Gannon determined that the Class suffered economic damages as a result of the embezzlement in the following amounts:

| Property / Sub-Class | Economic Damages Attributable to Embezzlement |
|---|---|
| East Broward Corporate Center | $68,887,732 |
| Cypress Creek Tower | $5,669,651 |
| Trafalgar / Avion | $9,011,276 |
| North University / Preferred Exchange | $20,244,526 |
| North Orange Wachovia Tower | $22,401,393 |
| Oak Grove | $13,382,379 |
| Total | $139,596,957 |

[D.E. 256-5, pp. 8-12].

Those calculations were then used, with the Court's approval, as the basis for allocating the $100 million settlement among the six Sub-classes:

| Property / Sub-Class | Economic Damages Attributable to Embezzlement | Percentage of Whole | Pro-Rata Allocation of Settlement Amount |
|---|---|---|---|
| East Broward Corporate Center | $68,887,732 | 49.35% | **$49,347,589** |
| Cypress Creek Tower | $5,669,651 | 4.06% | **$4,061,443** |
| Trafalgar / Avion | $9,011,276 | 6.46% | **$6,455,209** |
| North University / Preferred Exchange | $20,244,526 | 14.50% | **$14,502,126** |
| North Orange Wachovia Tower | $22,401,393 | 16.05% | **$16,047,193** |
| Oak Grove | $13,382,379 | 9.59% | **$9,586,440** |
| Total | $139,596,957 | 100.00% | **$100,000,000** |

[D.E. 289, pp. 3-4; D.E. 299, pp. 9-11].

We respectfully submit that the balance of the Class' damages – *i.e.*, $39,596,957 – should be assessed against the Cabot Defendants, and the same calculations should be used to allocate that amount among the Sub-classes, as follows:

| Property / Sub-Class | Economic Damages Attributable to Embezzlement | Percentage of Whole | Pro-Rata Allocation of Proposed Judgment |
|---|---|---|---|
| East Broward Corporate Center | $68,887,732 | 49.35% | **$19,540,143** |
| Cypress Creek Tower | $5,669,651 | 4.06% | **$1,608,208** |
| Trafalgar / Avion | $9,011,276 | 6.46% | **$2,556,067** |
| North University / Preferred Exchange | $20,244,526 | 14.50% | **$5,742,400** |
| North Orange Wachovia Tower | $22,401,393 | 16.05% | **$6,354,200** |
| Oak Grove | $13,382,379 | 9.59% | **$3,795,939** |
| Total | $139,596,957 | 100.00% | **$39,596,957** |

## CONCLUSION

For these reasons, Plaintiffs respectfully request the entry of a Final Default Judgment against the Cabot Defendants in the amounts set forth above.

Dated:  September 25, 2020

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Counsel for Plaintiffs and the Class
150 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone:  305.789.3200
Facsimile:  305.789.3395

/s/ Eugene E. Stearns
Eugene E. Stearns
Florida Bar No. 18598
estearns@stearnsweaver.com
Jason P. Hernandez
Florida Bar No. 18598
jhernandez@stearnsweaver.com
Matthew W. Buttrick
Florida Bar No. 176028
mbuttrick@stearnsweaver.com
Cecilia Duran Simmons
Florida Bar No. 469726
csimmons@stearnsweaver.com
Matthew M. Graham
Florida Bar No. 86764
mgraham@stearnsweaver.com
Ryan T. Thornton
Florida Bar No. 99195
rthornton@stearnsweaver.com
Joseph J. Onorati
Florida Bar No. 92938
jonorati@stearnsweaver.com

## CERTIFICATE OF SERVICE

I CERTIFY that on September 25, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF or other approved means.

/s/ Eugene E. Stearns
Eugene E. Stearns

## SERVICE LIST

Thomas Meeks (314323)
Email: tmeeks@carltonfields.com
Yolanda P. Strader (70212)
Email: ystrader@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
100 SE Second Street, Suite 4200
Miami, Florida 33131
Tel: (305) 530-0050
Fax: (305) 530-0055
*Co-Counsel for Defendant CBRE, Inc.*

Gregory J. Trask, Esq. (005583)
Email: gtrask@homerbonner.com
Kevin P. Jacobs, Esq. (169821)
Email: kjacobs@homerbonner.com
HOMER BONNER JACOBS, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tel: (305) 350-5100
*Counsel for Defendant Gloria Hernandez*

Ishmael A. Green (109100)
Email: Ishmael.green@akerman.com
James M. Miller (201308)
Email: james.miller@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095
*Counsel for Defendant, Harry L. Silverman*

D. Matthew Allen (866326)
Email: mallen@carltonfields.com
Mariko Shitama Outman (106681)
Email: msoutman@carltonfields.com
CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three at International Plaza
4221 w. Boy Scout Blvd. – Suite 1000
Tampa, Florida 33607-5780
*Co-Counsel for Defendant CBRE, Inc.*

Hardy L. Roberts, III (0062545)
Email: hroberts@careyomalley.com
CAREY, O'MALLEY, WHITAKER, MUELLER, ROBERTS & SMITH
712 S. Oregon Avenue
Tampa, Florida 33606
Tel: (813) 250-0577
*Co-Counsel for Defendant CBRE, Inc.*